NEW ENGLAND TERMINAL CO. *v.* THE M. VANDERCOOK *et al.*

McWILLIAMS *et al. v.* THE INTREPID.

*(District Court, D. Connecticut.* February 28, 1891.)

SALVAGE—WHAT CONSTITUTES—COMPENSATION.

The tug M. started on a voyage through Long Island sound with 15 boats and chunkers in tow. About 2 o'clock in the morning, the wind and sea having arisen, she tried to make a harbor, but, owing to her rolling, her steam-pipe broke, the smoke-stack went overboard, and she became helpless. She let go both anchors, and finally brought up with the tow about 500 feet off a lee shore, with many rocks in the vicinity. In the mean time one of the boats swamped and sank. After she had made signals of distress for an hour, the tug I., with car-floats in tow, rounded to, and, taking a hawser, began to move the M. and her tow slowly towards a harbor, and in the mean time two more of the boats sank. The I.'s sister tug, E., was shortly sighted, and assisted in taking the tow to a place of safety. The value of the tug and tow was about $30,000, that of the salving vessels, with the car-floats they had in tow, was $300,000, and the I. was engaged in the service three hours and a half, and the E. about 45 minutes. *Held,* that the M. and her tow were in danger of total loss, and the service rendered was a salvage service, for which a compensation of $3,500 would be decreed.

In Admiralty.

*C. C. Burlingham,* for the New England Terminal Company.

*Joseph F. Mosher,* for the Vandercook, Daniel McWilliams, and sundry others.

*Chas. M. Hough,* for the Lehigh Coal & Navigation Company.

*R. S. Pickett,* for Benedict, Downes & Co.

SHIPMAN, J. The first above entitled cause is a libel for the salvage of a steam-tug and its tow. The second is a libel by the owners of two boats in the tow against one of the propellers, which performed the salvage service, for negligence whereby said two boats were lost. The two actions were tried together.

On the evening of November 22, 1890, the steam-tug M. Vandercook left Port Morris to go through Long Island sound with a tow of 15 boats and chunkers in four tiers, all laden with coal. The Gladwish, Owen McWilliams, Wild West, and Kaska Williams were in the first tier; the Andrew Dellinger, Annie McCaffrey, Katie McWilliams, and George McCaffrey were in the second tier; the Clara McWilliams, three chunkers, and the D. & R. No. 7 made the third tier; the Stag and the Kirk made the fourth tier. The Stag, the Gladwish, and the Clara McWilliams were subsequently lost. The tug and all the other vessels and their cargoes were attached upon the libel for salvage, except the cargoes of the following vessels: The Owen McWilliams, George McCaffrey, Annie McCaffrey, D. & R. No. 7, and the chunkers 2168 and 2170. The libel as to the D. & R. No. 7 was subsequently withdrawn. The values of the attached vessels and cargoes which are now libeled are as follows:

| | | |
|---|---|---:|
| The M. Vandercook, | | $ 2,150 |
| " Wild West, | | 3,000 |
| Her cargo, | | 1,425 |
| The Katie McWilliams, | | 1,500 |
| Her cargo, | | 1,200 |
| The Andrew Dellinger, | | 2,100 |
| Her cargo, | | 1,200 |
| The Kirk, | | 800 |
| Her cargo, | | 1,200 |
| The Owen McWilliams, | | 2,500 |
| " Kaska Williams, three chunkers and cargos attached, all belonging to Lehigh Coal & Navigation Co., | | 8,125 |
| " George McCaffrey, | | 2,000 |
| " Annie McCaffrey, | | 2,000 |
| Total, | | $29,200 |

The night became stormy, the wind was strong, and the sea was rough, and about 2 o'clock the captain of the tug determined to make for Captain's Harbor for safety. At 40 minutes past 2 o'clock, and while in this attempt, the steam-pipe of the Vandercook broke, the smoke-stack broke and rolled over, and the vessel became helpless. The injury was caused by the rolling of the tug. The tug and tow were then about a mile south-east of Little Captain's island, and drifted about one and one-half miles to the eastward, until they came to a stop near Woolsey's point. The first tier, in which was the Gladwish, was between Woolsey's point and Woolsey's rock. Part of the tow was within 500 feet of the shore. The entire length of the tow from the bow of the tug to the tail of the tow was about 1,000 feet. The tow was not lying in a regular line. The wind was strong from the south-west, blowing on shore. There are a good many ragged rocks in the vicinity of Woolsey's rock and near the shore. The Vandercook threw out her large anchor, weighing 618 pounds, which did not hold. She then threw out a smaller anchor, and the vessels ceased drifting, but whether or not they were held by the anchors is a matter of uncertainty. Soon after the accident, the Stag swamped and sank. For an hour the Vandercook signaled for help by waving lanterns and a torch-light. The Intrepid and Express are owned by the New England Terminal Company, are powerful steamers, the Express being worth $190,000, and the Intrepid being worth $50,000, and are engaged in the towing of floats loaded with freight-cars between Wilson's Point and New York city. About 4 o'clock on the morning of November 23, 1890, the Intrepid left Wilson's Point with two floats covered with freight-cars, bound for New York. The floats were worth $40,000, and the cargo was worth $20,000. She passed Stamford light at 5:23 A. M., afterwards saw the signals of distress from the Vandercook, skillfully rounded to, and at about 6 o'clock A. M. made one of her floats fast to the Vandercook, whose captain said he wanted to be taken into Captain's harbor. The Intrepid pulled for three-fourths of an hour without starting the tug and tow. The tug attached to the tow was then pulled up to the large anchor, which the Vandercook took on board, abandoning the small

anchor, and the Intrepid moved slowly on. She had moved but a little further when the Gladwish sank, having struck a rock, or having been on a rock when she was pulled off. The Intrepid proceeded slowly about half a mile, when the Clara McWilliams swamped and sank upon a comparatively smooth bottom. It was now blowing very heavily, with a heavy sea. The Intrepid had now sighted the Express, her sister steam-tug, who was on her way, with one float in tow, to New York, and had signaled to her for her co-operation. She hauled in at 7:45 A. M., got a hawser to the Intrepid, helped in towing the disabled tug and her tow for about 45 minutes, then cast off at what is known as the "Black Buoy," and proceeded on her way to New York, while the Intrepid took the vessels to a place of safety in Captain's Harbor, and then went also to New York, having been detained upon this service three and one-half hours. The Intrepid and Express stopped in very bad weather to render aid to helpless vessels, and did their work promptly, energetically, and skillfully. Being very powerful vessels, they incurred no danger to themselves. There was some danger of parting the lines which held the car-floats together when the Intrepid rounded to, and of consequent injury to the floats and cargo. After she had successfully turned her course to go to the help of the Vandercook, without injury to the floats which she had in tow, the danger ceased. The value of the property which was occupied in the salving service was $300,000.

The point in dispute between the parties is the degree of danger from which the tug and tow were rescued. Notwithstanding the theory of the claimants that these vessels had drifted into a place of comparative safety, where they could lie without much, if any, danger, I find the fact to be that they were in imminent danger of total loss. The Vandercook was weak, if she had been uninjured, and after her injury was shattered and helpless. Most of the canal-boats were also weak, unable to withstand a heavy wind and sea, and were in danger of being swamped. Whether the Gladwish was upon the rocks at the time the Intrepid reached the Vandercook cannot be decided with certainty. If she was not actually upon a rock, there must have been an obstruction somewhere, which for three-fourths of an hour prevented the Intrepid from moving the tow. When the tow began to move, either by being towed or by drifting, there was great danger of some vessel's getting upon one of the numerous rocks near the shore. The Gladwish happened to be the one which was caught by and scraped upon a rock. The satisfactory proof that the vessels had not reached a place of comparative safety is that the Clara McWilliams suddenly swamped and sank upon a smooth bottom. The condition of the wind and weather, and the inability of the boats to withstand a high sea, were such that if the Intrepid had not come to the rescue, the strong probability is that the boats would, one after another, have been swamped, as the Stag and the Clara McWilliams had been, because no other tug could have come to their help before 4 o'clock in the afternoon of that day. All other tugs and tows upon the Sound had sought and found a harbor of refuge. The degree of danger from which the property was rescued was extreme, and is

the principal element which enters into the question of the amount of salvage. The circumstances which prevent a large reward are that the labor of the salvors was not great, their property was not put in peril, and the officers and crew of the salvors were not in personal danger in saving the claimant's property. The value of the property which is the subject of this libel is $29,200. I think that the sum of $3,504 should be awarded, for which sum, with costs, let a decree be entered in favor of the libelants. The terms of the decree will be settled upon notice.

Upon the libel of Daniel McWilliams *et al.* little need be said in addition to the facts which have been recited. The libel was brought to recover damages for the negligent conduct of the Intrepid in attempting to tow the Vandercook and her tow, whereby the Gladwish and the Clara McWilliams were lost. At the close of the trial the libelants admitted that there was no cause of action as to the Clara McWilliams. The affirmative testimony as to any negligence with respect to the Gladwish was very feeble, and had apparently no foundation in fact. I find that the allegations of the libel as to negligence are not true.

The libel is dismissed, with costs.